UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TAMICA SOBIERALSKI,**
**on behalf of her minor daughter,**
**TB,**

        **Plaintiff,**                      **CIVIL ACTION NO. 16-13247**

        **v.**                                        **DISTRICT JUDGE DENISE PAGE HOOD**

**COMMISSIONER OF**                       **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Tamica Sobieralski seeks judicial review of Defendant Commissioner of Social Security's determination that her minor daughter, TB, is not entitled to social security benefits for her mental and physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 14). Plaintiff filed a Response to Defendant's Motion. (Docket no. 18.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.**        **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 14) be **GRANTED**.

## II.     PROCEDURAL HISTORY

Plaintiff, acting on behalf of her minor daughter (hereafter, "Claimant"), filed an application for Supplemental Security Income (SSI) benefits with a protective filing date of October 17, 2013, alleging that Claimant had been disabled since April 25, 2012, due to attention deficit hyperactivity disorder (ADHD). (TR 29, 174, 196.) The Social Security Administration denied Claimant's application on February May 2, 2014, and Claimant requested a *de novo* hearing. (TR 128–34.) On August 10, 2015, Claimant and Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Gregory Holiday. (TR 50–88.) In a September 16, 2015 decision, the ALJ found that, due to the fact that two of Claimant's prior applications from May 2012 and April 2013 had been denied, Claimant's alleged onset date could be no earlier than July 2, 2013. (TR 29.) The ALJ further determined that Claimant was not entitled to benefits based on her current application because she "does not have an impairment or combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." (TR 43.) The Appeals Council declined to review the ALJ's decision (TR 1–5), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently pending before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 13 at 6–13) and the ALJ (TR 34–36) each set out a detailed, factual summary of Claimant's medical record, school record, and the hearing testimony. Defendant

adopts the ALJ's recitation of the facts. (Docket no. 14 at 4.) Having conducted an independent review of Claimant's medical record, school record, and the hearing transcript, the undersigned finds that there are no material inconsistencies between Plaintiff's and the ALJ's recitations of the record. Therefore, the undersigned will incorporate the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Claimant was a school-age child on the date her application was filed and at the time of the ALJ's decision; that Claimant had not engaged in substantial gainful activity since October 17, 2013, the date the application was filed;[1] and that Plaintiff suffered from the following severe impairments: learning disability, ADHD, encopresis, oppositional defiant disorder, psychosis NOS and eczema. (TR 32.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 32.) The ALJ further found that Claimant's impairments did not "functionally equal[]" the listings because Claimant did not have an impairment or combination of impairments that resulted in two marked limitations or one extreme limitation in the applicable domains of functioning." (TR 33–44.) Therefore, the ALJ found that Claimant was not disabled under section 1614(a)(3)(C) of the Social Security Act. (TR 44.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining

---

[1] Supplemental Security Income is not payable prior to the "month following the month" in which the claimant's application is filed. 20 C.F.R. § 416.335.

whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

A child will be considered disabled if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child's impairments result in marked and severe limitations, Social Security Administration ("SSA") regulations prescribe a three-part evaluation:

(1) A child will be found "not disabled" if she engages in substantial gainful activity.

(2) A child will be found "not disabled" if she does not have a severe impairment or combination of impairments.

(3) A child will be found "disabled" if she has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

20 C.F.R. § 416.924(a)-(d) (2010).

To determine whether a child's impairments functionally equal a listing, the SSA assesses the functional limitations caused by the child's impairments. 20 C.F.R. § 416.926a(a) (2010). To do so, the SSA considers how a child functions in six domains:

(1) Acquiring and using information;

(2) Attending and completing tasks;

(3) Interacting and relating with others;

(4) Moving about and manipulating objects;

(5) Caring for yourself; and

(6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment functionally equals the listing, and the child is considered disabled. 20 C.F.R. § 416.926a(d).

**C. Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six

remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed or remanded under sentence four because the ALJ's functional equivalence analysis is not supported by substantial evidence in the following domains: (1) interacting and relating with others; and (2) caring for yourself. (Docket no. 13 at 16–18.)

### 1. The Domain of Interacting and Relating with Others

Plaintiff first argues that the ALJ erred by failing to find that Claimant is markedly limited in the domain of interacting and relating with others, asserting that the record supports such a finding. (Docket no. 13 at 16.) Defendant argues that the ALJ's decision is supported by substantial evidence, and should therefore be affirmed, regardless of whether there is evidence which could tend to support a finding of marked limitation in this domain. (Docket no. 14 at 7–12.)

A claimant's ability to interact and relate with others refers to "how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." (TR 39 (citing 20 C.F.R. 416.926a and SSR 09-5p).) For school age children, this includes beginning to "understand how to work in groups to create

6

projects and solve problems," increasing the ability to "understand another's point of view and to tolerate differences," and being able to "talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv). Examples of limited functioning children of all ages might have in this domain include: (1) not reaching out to picked up and held by a caregiver; (2) lacking close friends or any friends of the same age; (3) avoiding or withdrawing from familiar people or being "overly anxious or fearful of meeting new people or trying new experiences"; (4) having "difficulty playing games or sports with rules"; (5) having "difficulty communicating with others; e.g., in using very and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance"; and (6) having "difficulty speaking intelligibly or with adequate fluency." 20 C.F.R. § 416.926a(i)(3).

With regard to Claimant's ability to interact and relate with others, the ALJ found, in full, as follows:

> <u>The claimant has less than marked limitation in interacting and relating with others</u>.
>
> In April 2014, in an [Individualized Education Program, "IEP"], the claimant's teacher described her as insecure. In terms of behavior, the claimant was described as able to play quietly when required. She also took turns as appropriate for her age, but often interrupted or intruded on other people's conversations or games (Exhibit 12F, page 10). The claimant was on a behavior plan in June 2014, but her teacher also noted that now had either "no" or only "slight" problems in this domain (Exhibit 19E, page 4 and 23E).
>
> At the hearing, the claimant testified that she does have friends that she liked to play with. The claimant was also communicative at the hearing and appeared to understand and cooperate. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall ability to interact with others on a day-to-day basis, the apparent lack of any issues during the hearing is given some slight weight in reaching the conclusion that the claimant does not have "marked" limitations in this domain.

7

> Therefore, while the claimant does have a limitation in this domain, that limitation does not "seriously interfere" with the claimant's functioning in the activities relevant to this area; and a "less than marked" rating is appropriate.

(TR 40.)

Plaintiff does not directly challenge the accuracy of the ALJ's findings or characterization of the evidence cited above; rather, she argues that the ALJ's findings are "contradictory to *other* evidence in the record" which, Plaintiff claims, shows that Claimant has at least marked limitations in the domain of interacting and relating with others. (Docket no. 13 at 16 (emphasis added).) In support of this assertion, Plaintiff relies on a Questionnaire completed by Claimant's social worker, the fact that Claimant was suspended multiple times in the first grade for behavior issues; Community Mental Health records from March 2013; and the results of Claimant's 2014 consultative examination. Plaintiff's argument fails; while she is able to marshal evidence that supports her position, she is not entitled to remand simply because she can point to evidence in the record that might support a different conclusion than was reached by the ALJ. *See Her v. Comm'r*, 203 F.3d 388, 389–90 (6th Cir. 1999). The undersigned will nevertheless address the evidence Plaintiff cites.

First, the record contains a June 2014 Teacher Questionnaire completed by Plaintiff's social worker, Ms. Mary Reilly. (TR 278–285.) In the Questionnaire, Ms. Reilly indicated that Claimant has "serious" to "very serious" problems relating to her ability to interact with and relate to others, including "playing cooperatively with other children," and "taking turns in a conversation. (TR 282.) Ms. Reilly specifically wrote that Claimant "[b]lurts out whatever is on her mind, irregardless [sic] of who she offends, uses profanity, needs adult supervision to handle squabbles." (*Id.*) Nevertheless, as Defendant points out, the ALJ gave Ms. Reilly's opinion "limited weight," and instead assigned the "greatest weight" to the June 2014 Teacher

Questionnaire completed by Ms. Christine Seraphinoff, Claimant's third grade teacher. (TR 36.) Ms. Seraphinoff wrote that Claimant had only slight problems in activities relating to interacting and relating with others. (TR 274.) Indeed, for two activities—"relating experiences and telling stories," and "interpreting meaning of facial expression, body language, hints, sarcasm"—Ms. Seraphinoff indicated that Claimant had "no problem." (*Id.*) The ALJ explained that he assigned greater weight to Ms. Seraphinoff's Questionnaire (versus Ms. Reilly's), because Ms. Seraphinoff had spent seven hours per day, five days per week with Claimant for ten months, whereas Ms. Reilly only saw Claimant approximately once a week. (TR 279.) The ALJ further noted that Ms. Reilly's opinion was only entitled to limited weight because it was internally inconsistent; specifically, Ms. Reilly noted Claimant's medication was "effective" while still maintaining that Claimant had "significant limitations." (TR 36.) Plaintiff does not challenge the ALJ's determination that Ms. Seraphinoff's opinion is entitled to greater weight than Ms. Reilly's opinion.

Plaintiff next cites the fact that Claimant was suspended from school several times in first grade, and a report specifically concerning an April 16, 2012 incident (also when Plaintiff was in first grade), which states that Claimant "gave the middle finger to several students and punched two students in the stomach." (Docket no. 13 at 16 (citing TR 316, 322).)

The note about Claimant's suspensions comes from a July 2012 consultative examination completed in connection with a prior unfavorable SSI application. (TR 315–18.) Defendant argues that this report should not be considered because it relates to Claimant's condition outside the relevant time period, an argument which Plaintiff does not dispute. (Docket no. 14 at 10–11; *see also* Plaintiff's Reply, docket no. 18.) Regardless, however, the undersigned has reviewed the report and finds that it does not mandate a remand, even considering the other evidence cited

by Plaintiff. First, as Defendant notes, the report is outdated. It indicates that Plaintiff was suspended seven times in first grade. (TR 316.) Certainly, Claimant's behavior in the third grade, as documented by Ms. Seraphinoff, is more relevant. Moreover, the examiner (in the 2012 examination) noted several positive findings on the same report, including that Claimant's thoughts were "organized, logical, simple and concrete," and that her "[c]ommunication is age appropriate." (TR 316.) Claimant's stated interests include "TV, going to the park, skating and friends," and the report further provides that Claimant "prefers to be with others and has fair relationships," particularly when on her medications, which were reportedly "working well." (*Id.*) It is also worth noting that the April 16, 2012 incident, which Plaintiff also relies upon, occurred prior to the completion of the July 2012 consultative examiner's report. And, the July 2012 report (which specifically notes the 1st grade suspensions) further states that Plaintiff's behavior and relationships with other children "have improved to fair," particularly when she takes her medication. (TR 316–17.)

Next, Plaintiff points out that "Community Mental Health records document problems with impulse control, touching others, interrupting people, and being disruptive." (Docket no. 13 at 16.) The particular notes which Plaintiff relies upon—which are recorded on an Initial Intake form completed in March 2013—document what Claimant's mother (Plaintiff) reported, not necessarily the opinion or findings of the social worker that completed the Initial Intake. (*See* TR 332.) Although the form does indicate elsewhere that Claimant was experiencing significant problems at that time, the ALJ reasonably gave more weight to the more updated opinion provided by Ms. Seraphinoff.

Last, Plaintiff emphasizes that "in April of 2014 during a consultative examination it was noted the [Claimant] is a bully at school, has trouble keeping friends, and is often caught lying.

10

She also has become more difficult and unruly with adults and stabbed another student with a pencil." (Docket no. 13 at 16 (citing TR 474–75).)  As Defendant points out, these issues appear to have been reported to the consultative examiners by Plaintiff, as they are included in the "history of illness" section of the exam report, and the exam report states that "[t]he claimant's mother was present today to provide history and collateral data." (TR 474–76.)  In other words, like the Community Mental Health records, they were not observations made by independent medical professionals or Claimant's teachers.  Moreover, ultimately, the consultative examiners found that Claimant "demonstrated the ability to interact appropriately with this examiner during the examination process." (TR 477.)

In sum, none of the evidence cited by Plaintiff detracts from the evidence relied upon by the ALJ.  The ALJ reasonably concluded that Claimant had limitations in the domain of interacting and relating with others, but that those limitations were less than marked.  The ALJ's decision is supported by substantial evidence, and Plaintiff's Motion should be denied with regard to this issue.

### 2. The Domain of Caring for Yourself

Plaintiff also asserts that the record supports a finding of a marked impairment in the functional area of "caring for yourself." (Docket no. 13 at 17.)  Defendant argues that the ALJ's decision is supported by substantial evidence, and therefore should be affirmed, regardless of whether the record could support a finding of a marked impairment. (Docket no. 14 at 12–16.)

A claimant's ability to care for herself refers to "how well [she] maintain[s] a healthy emotional and physical state, including how well [she] copes with stress and changes in [her] environment; and whether [she] take[s] care of [her] own health, possessions, and living area." 20 C.F.R. § 416.926a(k), SSR 09-7p.  It includes, among other things, recognizing illness,

"following recommended treatment, taking medication as prescribed, . . . and knowing when to ask for help from others." 20 C.F.R. § 416.926a(k)(1)(iv). The applicable regulation provides that school-age children "should be independent in most day-to-day activities" like bathing and getting dressed, although they "may still need to be reminded sometimes to do these routinely." 20 C.F.R. § 416.926a(k)(2)(iv). The regulation further instructs, to school-age children:

> You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

*Id.* Examples of limited functioning children of all ages might have in this domain include: placing inedible objects in the mouth; using "self-soothing activities showing developmental regression (e.g., thumbsucking, re-chewing food)," or having "restrictive or stereotyped mannerisms (e.g., body rocking, headbanging)"; failing to dress or bathe appropriately due to an impairment; engaging in self-injurious behavior; being unable to "spontaneously pursue enjoyable activities or interests"; and having "disturbance in eating or sleeping patterns." 20 C.F.R. § 416.926a(k)(3). With regard to Claimant's ability to care for herself, the ALJ found, in full, as follows:

> <u>The claimant has less than marked limitation in the ability to care for herself</u>.
>
> It is fully recognized that the claimant has encopresis, which is a bladder and bowel problem where one has an urgent need to urinate or defecate. She wears diapers to bed and insists that she can always make it to a bathroom during the day and that she does not urinate or defecate on herself. Her mother described past instances where they concluded that the claimant used the bathroom either on herself or at a non-toilet area of the house. Moreover, the claimant insists, contrary to her mom's testimony[,] that she can dress herself. She admitted that there are times when her mom tells her to go back and re-dress because she is not dressed appropriately for the weather or occasion. It is noted that I do not accept

all of the claimant's statements about how well she is doing because there is some indication that she may be embarrassed to admit certain difficulties.

Information on this domain is missing from the claimant's teacher's questionnaire in June 2014 (Exhibits 19E and 23E); however, in April 2014, in an IEP, while the claimant's teacher described her as insecure, she added that the claimant needs about as much one-on-one attention as other girls her age (Exhibit 12F, page 10).

Further, the claimant testified that she enjoys listening to music and dancing, both by herself and with others evidence age appropriate ways the claimant is able to enjoy herself.

Thus, the claimant does have a limitation in this domain, but that limitation does not "seriously interfere" with the claimant's functioning in the activities relevant to this area; therefore, a "less than marked" rating is appropriate.

(TR 42.) Plaintiff argues that "[s]ubstantial evidence indicates that the [Claimant] engages in inappropriate behaviors in terms of bathing and using the toilet and engages in self-injurious behaviors such as self-inflicted injuries and refusing to take medication." (Docket no. 13 at 17.)

The symptoms of Claimant's encopresis would tend to support a finding of a marked limitation in this domain, and it is clear that the ALJ fully appreciated this serious issue. However, Ms. Seraphinoff indicated in a January 2014 Teacher Questionnaire that Claimant had "no problem" with "taking care of personal hygiene," "caring for physical needs," and "cooperating in, or being responsible for, taking needed medications," all of which are relevant for evaluating Claimant's limitations in this domain, and which support the ALJ's finding that Claimant's limitations are not marked. (TR 259.) It is true that Plaintiff reported that Claimant "sometimes hides her pills or drops them purposely on the floor" (TR 474), and that Claimant's encopresis has not improved (TR 70); however, the ALJ found that Plaintiff's reports were not entirely credible, a finding that Plaintiff does not challenge. (TR 34 (stating that "the statements

13

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible," after discussing Plaintiff's testimony).)

Other evidence additionally shows that Plaintiff did not have any disturbances in her eating or sleeping patterns (TR 113, 474), and that she was able to enjoy age-appropriate activities like dancing and listening to music with her friends (TR 80–81), which both support the ALJ's finding in this domain. The nonexamining Disability Determination Service physicians, who were aware of Claimant's encopresis and the reports of her allegedly self-injurious behavior, opined that Claimant had a "Less Than Marked" limitation in this domain (TR 115), an opinion to which the ALJ assigned "some weight," as "largely consistent with the record as a whole" (TR 36.) Ms. Seraphinoff reported that all of Claimant's issues improve when she is on her medication, which detracts from the credibility of Plaintiff's claim that Claimant refuses to take her medication. (TR 487.)

It is true that Ms. Reilly, Claimant's social worker, opined that Claimant had a "very serious problem" with her personal hygiene and with caring for her physical needs. (TR 284.) However, as discussed above, the ALJ considered the report of Ms. Reilly, Claimant's social worker, but assigned it limited weight, based on the fact that Ms. Reilly spent far less time with Claimant than did Ms. Seraphinoff, and because Ms. Reilly's findings were internally inconsistent. (TR 36.)

While, again, there is evidence to support Plaintiff's assertions, nothing in Plaintiff's argument gives the undersigned a basis for recommending that the ALJ's well-reasoned opinion be rejected. At most, Plaintiff has shown that the ALJ's decision fell with the ALJ's zone of choice. There is substantial evidence supporting the ALJ's decision with regard to the "caring for yourself" domain. And, if the Commissioner's decision is supported by substantial evidence,

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible," after discussing Plaintiff's testimony).)

Other evidence additionally shows that Plaintiff did not have any disturbances in her eating or sleeping patterns (TR 113, 474), and that she was able to enjoy age-appropriate activities like dancing and listening to music with her friends (TR 80–81), which both support the ALJ's finding in this domain. The nonexamining Disability Determination Service physicians, who were aware of Claimant's encopresis and the reports of her allegedly self-injurious behavior, opined that Claimant had a "Less Than Marked" limitation in this domain (TR 115), an opinion to which the ALJ assigned "some weight," as "largely consistent with the record as a whole" (TR 36.) Ms. Seraphinoff reported that all of Claimant's issues improve when she is on her medication, which detracts from the credibility of Plaintiff's claim that Claimant refuses to take her medication. (TR 487.)

It is true that Ms. Reilly, Claimant's social worker, opined that Claimant had a "very serious problem" with her personal hygiene and with caring for her physical needs. (TR 284.) However, as discussed above, the ALJ considered the report of Ms. Reilly, Claimant's social worker, but assigned it limited weight, based on the fact that Ms. Reilly spent far less time with Claimant than did Ms. Seraphinoff, and because Ms. Reilly's findings were internally inconsistent. (TR 36.)

While, again, there is evidence to support Plaintiff's assertions, nothing in Plaintiff's argument gives the undersigned a basis for recommending that the ALJ's well-reasoned opinion be rejected. At most, Plaintiff has shown that the ALJ's decision fell with the ALJ's zone of choice. There is substantial evidence supporting the ALJ's decision with regard to the "caring for yourself" domain. And, if the Commissioner's decision is supported by substantial evidence,

it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389–90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). Therefore, Plaintiff's Motion should be denied with regard to this issue.

## VI. CONCLUSION

For the reasons stated herein, the Court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 13) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 14).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 3, 2017              s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 2, 2017              s/ Lisa C. Bartlett
                                   Case Manager